Joseph Lee HULL, a minor, by his parents and next friends, John HULL, his father, and Alberta Hull, his mother, and John Hull and Alberta Hull, individually, Plaintiffs,

v.

MERRELL DOW PHARMACEUTICALS INC., Defendant.

No. 86–6215–Civ.

United States District Court, S.D. Florida.

Oct. 26, 1988.

Alberta Lee Hull, Fort Lauderdale, Fla., pro se.

John Hull, Lauderdale By the Sea, Fla., pro se.

Francis Pierce, III, Gurney & Handley, P.A., Orlando, Fla., Frank C. Woodside, III, Dinsmore & Shohl, Cincinnati, Ohio, for defendant.

MEMORANDUM ORDER
AND OPINION

GONZALEZ, District Judge.

Joseph Lee Hull, minor plaintiff-child of John and Alberta Hull, and John and Alberta Hull, individually, bring this action against Merrell Dow Pharmaceuticals Inc. ("Merrell Dow"), alleging that the ingestion of Bendectin by Alberta Hull during her pregnancy caused Joseph to be born with certain birth defects. The matter is now before the Court on Merrell Dow's Motion for Summary Judgment. For the reasons set forth below, the Court finds this Motion to be meritorious and hereby grants summary judgment in favor of Merrell Dow against plaintiffs.

Procedural History

This action was originally filed on January 12, 1984 in the Circuit Court for Broward County and later removed by defendant to this Court. The Court granted defendant's Petition for Removal by Order dated June 9, 1986.

On October 14, 1987, the Court granted plaintiffs' attorney, Burton E. Burdick's Motion to Withdraw. Thereafter, the Court set a scheduling conference for March 17, 1988. Plaintiffs, *pro se*, wrote correspondence to the Court, dated March 7, 1988, which the Court treated as a Motion for Extension of Time. In this letter, plaintiffs advised the Court that they had obtained new counsel, Barry Nace and Thomas Taggart, but that neither could attend the Scheduling Conference. By Order dated March 8, 1988, the Court continued the Scheduling Conference to June 9, 1988.

On June 7, 1988, plaintiffs, *pro se*, filed another Motion for Extension of Time, indicating that their attorneys, Mr. Nace and

Mr. Taggart, were unable to attend the Scheduling Conference. The Court again reset the Scheduling Conference for October 6, 1988. In that Order, dated June 7, 1988, the Court notified plaintiffs that no further continuances would be granted. In addition, the Court ordered that plaintiffs keep it advised whether Mr. Nace and Mr. Taggart would be representing them.

Plaintiffs did not appear at the October 6, 1988 Scheduling Conference either in person or through counsel. Moreover, defendant has supplied the Court with letters from Mr. Nace and Mr. Taggart demonstrating that, some time ago, they advised plaintiffs they would not undertake representation in this action. Thus, plaintiffs have not complied with the Court's June 9, 1988 Order.

Defendant's Motion for Summary Judgment has been pending, unopposed, since February 26, 1988 and the Court is now prepared to rule on it. The Court finds defendant's Motion for Summary Judgment to be persuasive and dismisses this action for the reasons described below.

*Analysis*

Plaintiffs allege that Alberta Hull's use of Bendectin during pregnancy caused Joseph Hull to be born with various deformities of the left leg and foot. Merrell Dow seeks summary judgment on two bases: (1) Plaintiffs lack sufficient evidence, as a matter of law, to prove that Bendectin causes birth defects (and more particularly limb defects) in humans; and (2) Plaintiffs also cannot demonstrate causation in this specific case because Bendectin was first ingested by Mrs. Hull too late in her pregnancy. The Court finds both positions to be well taken.

It is obvious to the Court that Plaintiffs cannot establish a causal relationship between Bendectin use and the occurrence of birth defects, particularly limb deformities. The body of scientific literature demonstrating the safety of Bendectin is extensive and overwhelming. More than thirty human epidemiological studies have been done and none have concluded that Bendectin is teratogenic.

Several courts have addressed the adequacy of Plaintiffs' causation evidence in Bendectin litigation and have found it insufficient as a matter of law.[1] In *Lynch v. Merrell–National Laboratories*, 646 F.Supp. 856, 867–868 (D.Mass.1986), *aff'd* 830 F.2d 1190 (1st Cir.1987), the district court granted summary judgment on causation, concluding:

> [T]he only relevant, probative, and non-misleading evidence on the issue of Bendectin's role in the causation of birth defects are the controlled observations of human beings, documented in more than 25 published epidemiological studies. The data from these studies do not indicate any statistically significant association between Bendectin and the type of birth defect suffered by Margo Lynch [a limb defect].

Similarly, in *Richardson v. Richardson–Merrell Inc.*, 649 F.Supp. 799, 803 (D.D.C. 1986) the trial judge reversed a jury verdict and entered judgment for Merrell Dow, finding that reasonable jurors could not conclude Bendectin causes birth defects. The D.C. Circuit Court of Appeals recently affirmed, noting: "[T]he drug [Bendectin] has been extensively studied and a wealth of epidemiological data has been amassed, none of which has concluded that the drug is teratogenic. Uniquely to this case, the law now has the benefit of twenty years of scientific study, and the published results must be given their just due." 857 F.2d 823 (D.C.Cir.1988).

Additionally, even if Bendectin did cause birth defects, Plaintiffs cannot prove that the drug is responsible for the deformities suffered by Joseph Hull. In fact, the uncontroverted evidence in this case establishes that Bendectin could not have caused Joseph Hull's birth defects. The affidavit

---

1. Juries have also exonerated Bendectin as a cause of birth defects. The most significant such instance occurred in *In re Richardson–Merrell Inc. "Bendectin" Products Liability Litigation,* 624 F.Supp. 1212 (S.D.Ohio 1985), *aff'd* 857 F.2d 290 (6th Cir.1988). There, in a consolidated trial involving nearly 1200 claims, the jury found that Bendectin had not been shown to cause birth defects of any type.

of Boris Kousseff, M.D., submitted by Merrell Dow in support of its Motion, demonstrates that Mrs. Hull first took Bendectin too late in pregnancy for it to be implicated in the birth defects of her son. Dr. Kousseff's review of the pertinent medical records and deposition testimony indicates that the earliest date of Bendectin ingestion was "seven weeks into the pregnancy." He concludes that "[b]ecause the limb buds from which the fetal foot bones form are already differentiated by that time in the pregnancy, ... Joseph Hull's congenital birth defects cannot be attributed to the ingestion of Bendectin."

In summary, the Court concludes that Defendant Merrell Dow is entitled to summary judgment because there exists no genuine issue of fact as to causation. Plaintiffs lack sufficient evidence as a matter of law to prove that Bendectin causes birth defects. Moreover, in this case Plaintiffs cannot establish that Bendectin caused Joseph Hull's congenital birth defects because the uncontroverted evidence shows first ingestion occurred too late in the pregnancy.

For these reasons, Defendant Merrell Dow's Motion for Summary Judgment is hereby GRANTED.