**Amy DeLUCA, et al., Plaintiffs,**

v.

**MERRELL DOW PHARMACEUTICALS, et al., Defendants.**

**Civ. A. 87–226(GEB).**

United States District Court, D. New Jersey.

June 7, 1989.

As Amended June 22, 1990.

**72**

Susan Scott, Riker, Danzig, Scherer & Hyland, Morristown, N.J., for defendant Merrell Dow.

Dennis A. Drazin, Drazin and Warshaw, P.C., Red Bank, N.J., for plaintiffs.

## AMENDED OPINION

BROWN, District Judge.

This Amended Opinion[1] resolves a motion by defendant Merrell Dow Pharmaceuticals, Inc. ("Merrell Dow") for summary judgment. This litigation arises out of the birth defects suffered by plaintiff Amy De-Luca. Ms. DeLuca brought suit through her mother and guardian *ad litem,* Cindy DeLuca, who, with her husband, joined as plaintiffs in their individual capacities. Plaintiffs allege that the birth defects Amy suffered in her limbs were caused by Bendectin, a drug produced by defendant Merrell Dow. Plaintiffs name as defendants Merrell Dow; Drs. Patrick Dwyer, Teresa Benecki, Pieter Ketelaar, and Robert Sex-

ton, Cindy DeLuca's treating obstetricians/gynecologists; and Pineland Associates, the professional corporation formed by the above doctors.

Merrell Dow now moves for summary judgment, arguing that the evidence indicates beyond a genuine issue of fact that Bendectin does not cause birth defects. Plaintiffs oppose the motion, claiming that the opinion of their expert witness, Dr. Alan Done, creates a genuine issue of fact as to causation. Merrell Dow counters that Dr. Done's testimony is not based on information reasonably relied upon by experts in his field, and therefore should be excluded under Fed.R.Evid. 703. Merrell Dow argues in the alternative that Dr. Done's testimony is insufficient to pass the relevancy test of Fed.R.Evid. 403.

Although framed as a summary judgment motion, Merrell Dow's motion is in fact two motions in one. The first is a motion to exclude plaintiffs' expert testimony pursuant to Fed.R.Evid. 104(a) because it has not met the foundational requirements of Fed.R.Evid. 703, or in the alternative, does not pass the relevancy test of Fed.R.Evid. 403. The second is the summary judgment motion. The success of the summary judgment motion depends wholly on the outcome of the first motion, for plaintiffs have offered no evidence other than Dr. Done's report and testimony to show that Bendectin caused Amy DeLuca's injury.

Summary judgment against a litigant is proper if that litigant relies exclusively on expert testimony to prove a material fact, and that expert's testimony has no foundation under Fed.R.Evid. 703. *In re Japanese Elec. Products Litigation,* 723 F.2d 238, 275–78 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); 3 J. Weinstein & M. Berger, Weinstein's Evidence § 703[03] at 703–15–29 (1988). While Fed.R.Evid. 703 "was intended to broaden the acceptable bases of expert opinion, ... it was not intended ... to make summary

1. The original Memorandum and Order resolving this motion was signed on June 7, 1989.

The Court amended the Memorandum and Order solely for the purpose of publication.

judgment impossible whenever a party has produced an expert to support its position." *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 672–73 (D.C.Cir.1977). Determining whether an expert's opinion has sufficient foundation under Fed.R.Evid. 703 is a legal determination to be made by the Court. *See Japanese Elec. Products Litigation*, 723 F.2d at 275–78. In making a determination of reasonable reliance under Rule 703, however, a court must consider whether the supporting information is reliable in the opinion of experts in the field, not in the court's own view. *Id.* at 276.

■ Plaintiffs' expert, Dr. Alan Done, is a 1952 graduate of the Medical School of the University of Utah. From 1956–1971, Dr. Done served in various professorships at the University of Utah College of Medicine and Stanford University. From 1971 to 1975, Dr. Done served as a Special Assistant to the Director of Pediatric Pharmacology, of the Bureau of Drugs in the Food and Drug Administration. From 1975 to 1983, Dr. Done was a professor of pediatrics and pharmacology at Wayne State University College of Medicine. He bases his conclusion that Bendectin caused Amy DeLuca's injuries on two sources: (1) his analysis of human epidemiological studies, and (2) structure activity considerations—that is, comparisons between the structure of Bendectin and certain similarly structured antihistamines which Dr. Done believes are teratogenic (i.e. they cause birth defects).[2]

Other courts uniformly have held as a matter of law that there is insufficient evidence to support a causal link between Bendectin and the birth defects suffered by other plaintiffs. *See Richardson v. Richardson–Merrell, Inc.*, 649 F.Supp. 799, 802 (D.D.C.1986), *aff'd*, 857 F.2d 823, 832 (D.C. Cir.1988) (j.n.o.v. in favor of Merrell Dow); *Lynch v. Merrell Nat'l Laboratories*, 646 F.Supp. 856, 866–67 (D.Mass.1986), *aff'd*, 830 F.2d 1190, 1194 (1st Cir.1987) (summary judgment in favor of Merrell Dow); *Hull v. Merrell Dow Pharmaceuticals*, 700 F.Supp. 28 (S.D.Fla.1988); (summary judg-

ment in favor of Merrell Dow); *Bernhardt v. Richardson Merrell, Inc.*, 723 F.Supp. 1188 (N.D.Miss.1989) (summary judgment in favor of Merrell Dow) (attached to defendant's reply brief at Ex. B); *Monahan v. Merrell–National Laboratories*, Civ. 83–3108–WD (D.Mass. December 18, 1987) (summary judgment in favor of Merrell Dow) (attached to defendant's reply brief at Ex. B); *cf. Thompson v. Merrell Dow Pharmaceuticals*, 229 N.J.Super. 230, 551 A.2d 177 (App.Div.1988) (judgment of involuntary dismissal in favor of Merrell Dow); *Diaz v. Merrell Dow Pharmaceuticals*, Civ. L–082085–84 (N.J.Super.Ct.Law Div. April 28, 1989) (summary judgment in favor of Merrell Dow) (attached to defendant's reply brief at Ex. A).

In two of these cases, courts granted judgment in favor of Merrell Dow despite contrary testimony by Dr. Done himself. *See Richardson*, 649 F.Supp. at 799; *Lynch*, 646 F.Supp. at 856. In *Richardson*, Dr. Done testified that he based his opinion that Bendectin was teratogenic on "knowledge of Bendectin's chemical structure, the *in vitro* studies, the animal teratology studies conducted by Merrell (and others), and the 'human data' he had reviewed, i.e., epidemiological studies which he found defective, inconclusive, or both ..." *Richardson*, 649 F.Supp. at 801. The district court granted judgment notwithstanding the verdict despite Dr. Done's testimony:

> Though Dr. Done might disagree, there is now nearly universal scientific consensus that Bendectin has not been shown to be a teratogen, and, the issue being a scientific one, reasonable jurors could not reject that consensus without indulging in precisely the same speculation and conjecture which the multiple investigations undertook, but failed, to confirm. That Dr. Done remains an unbeliever and was willing to testify to his disbelief 'with reasonable medical certainty' does not mandate that this case be left as the jury decided it. Without a genuine basis 'in or out of the record,' even his expert

---

**2.** Dr. Done originally intended to base his conclusions on his analysis of *in vivo* and *in vitro*

studies as well, but this Court excluded this evidence by order dated November 7, 1988.

'theoretical speculations' are insufficient to sustain the plaintiffs' burden of proving, by a preponderance of the evidence, that Bendectin not only causes congenital defects generally, but that, in particular, it caused those limb reduction defects with which [plaintiff] was most unfortunately born.

*Id.* at 803, *accord, Lynch,* 830 F.2d at 1194–97.

In *Lynch,* Dr. Done relied on the same evidentiary basis he used in *Richardson.* In granting summary judgment, the district court found specifically that the epidemiological studies relied on by Dr. Done—including a study by Dr. Shanna Swan, the same study upon which Dr. Done now relies—were sufficiently unreliable to provide a foundation under Rule 703 for Dr. Done's testimony. *Lynch,* 646 F.Supp. at 864–65. The district court in *Lynch* found the studies of analogous chemical structures relied on by plaintiffs in the instant action even less credible than the *in vivo* and *in vitro* studies, both of which this Court already has excluded on relevancy grounds:

> To accept the validity of these chemical structure studies, we must accept the premise that the drugs to which Bendectin is compared are, in fact, themselves teratogenic. Admission of such evidence at trial would necessitate 'minitrials' as to whether the chemically analogous drugs are indeed teratogenic. As the plaintiffs' expert, Dr. Done, has stated, chemical structure analysis can only raise 'suspicion' about potential teratogenicity and cannot be relied upon to show causation. . . . Due to the highly speculative nature of the chemical structure analogies, I must rule that such evidence does not comport with the requirements of Rule 703. . . .

*Id.* at 866.

Of course, the Court may not grant summary judgment in this matter solely on the basis of other courts' conclusions of law in similar cases. This Court must determine from the record before it whether defendant Merrell Dow has carried its burden of showing that the information upon which Dr. Done relies is not reasonably relied upon by other experts in that particular field. *See In re Japanese Elec. Products Litigation,* 723 F.2d at 276.

Dr. Done, however, has come forward with no new evidence connecting Bendectin to birth defects. Indeed, Dr. Done admits that the scientific community generally agrees that Bendectin does not cause birth defects, but that he disagrees. Moreover, the reports Dr. Done relies upon either address irrelevant topics, such as the causal link between Bendectin and pulmonary conditions in children, *see e.g.,* Plaintiff's brief at Ex. C., or conclude that Bendectin does *not* cause birth defects, *see e.g., id.* at Ex. D. Furthermore, Dr. Done candidly admits that the structure activity tests upon which he relies are merely screening tests with no conclusive weight, *see* Defendant's moving brief at Ex. K., and that, although he relies on epidemiological studies, he is not an epidemiologist. *See id.* at Ex. I. Plaintiff therefore has not approached a showing that Dr. Done's opinion has a foundation as required by Federal Rule of Evidence 703. This Court need not reach the issue of whether the evidence should be excluded under Fed.R.Evid. 403.

Summary Judgment is appropriate when the moving party has shown no genuine issue of fact and that he or she is entitled to judgment as a matter of law. Fed.R. Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Plaintiffs have not offered any evidence showing a causal link between Bendectin and birth defects. Accordingly, summary judgment is proper.

A Memorandum and Order consistent with this decision already has been entered.