## In re BENDECTIN PRODUCTS LIABILITY LITIGATION.

### Misc. No. 85–0996.

United States District Court,
E.D. Michigan, S.D.

Jan. 17, 1990.

Thomas Bleakley, Detroit, Mich., for plaintiffs.

Frank Woodside, III, Cincinnati, Ohio, for defendant.

### ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on a motion for summary judgment pursuant to Fed.R.Civ.P. 56 filed by defendant Merrell Dow Pharmaceuticals, Inc. (Merrell Dow).[1] Plaintiffs have filed an opposing memorandum and the defendant has subsequently replied.

Plaintiffs filed these products liability cases, now consolidated for trial before this Court, seeking damages for birth defects allegedly sustained by the minor plaintiffs as a result of their mothers' ingestion of the drug, Bendectin, during pregnancy. Merrell Dow, the manufacturer of Bendectin, moves for summary judgment of these cases on the theory that plaintiffs should be collaterally estopped from litigating the issue of whether Bendectin causes birth defects. Merrell Dow further argues that plaintiffs, as a matter of law, cannot demonstrate that a genuine issue of material fact exists as to the element of causation.

The summary judgment procedure under Federal Rule of Civil Procedure 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) *quoting First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson, supra* 477 U.S. at 255, 106 S.Ct. at 2513 *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson, supra* 477 U.S. at

---

**1.** Merrell Dow filed two supplemental memoranda prior to the filing of plaintiffs' opposing brief.

249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson, supra* at 249, 106 S.Ct. at 2510 *citing Cities Service*, 391 U.S. at 288–289, 88 S.Ct. at 1592–1593. If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), or is not significantly probative, *Cities Service, supra* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson, supra* 477 U.S. at 249, 106 S.Ct. at 2510.

Merrell Dow contends that the principles of collateral estoppel bar plaintiffs from litigating their claims. Defendant asserts that the consolidated trial held before this Court in February and March, 1985 ("the MDL Common Issues Trial") provided plaintiffs with a fair opportunity to be heard on the issue of whether Bendectin causes birth defects.[2] Merrell Dow further contends that based on the extensive history of the Bendectin litigation in which juries have returned verdicts in favor of Merrell Dow, or in the alternative, judges have granted defendant's motions for JNOV, relitigation of the causation issue is "fruitless". Since the vast majority of these trials have resulted in final verdicts or judgments for Merrell Dow, the defendant submits that the causation issue has been "exhaustively" litigated and "overwhelmingly" decided in the defendant's favor.

### The Defensive Use Of Collateral Estoppel

██ The doctrine of collateral estoppel provides that an actual and necessary determination of an issue by a court of competent jurisdiction is conclusive in subsequent cases based upon a different cause of action but involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, n.

5, 58 L.Ed.2d 552 (1979). Federal law not state law governs the inquiry of whether a prior federal court judgment collaterally estops the adjudication of a subsequent federal diversity action involving identical issues. *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 831 (6th Cir.1978). Previously, the scope of collateral estoppel was limited by the doctrine of mutuality which precluded either party from using a prior judgment as an estoppel against the other unless both parties were bound by that judgment. *Bigelow v. Old Dominion Copper Co.*, 225 U.S. 111, 127, 32 S.Ct. 641, 642, 56 L.Ed. 1009 (1912). The doctrine of mutuality has been eroded, *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and a defendant may now preclude a nonparty to the previous suit from contesting an issue a plaintiff in the prior suit has already litigated and lost *if* the nonparty plaintiff has had a full and fair opportunity to be heard on the issue.[3] *Id.* at 329, 91 S.Ct. at 1443.

██ Nonparties to a prior action have had a "full and fair opportunity" to litigate if they:

> [A]ssume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved ... [T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause ... [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record."

*Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210

---

**2.** The MDL Common Issues Trial was held before this Court and tried on the sole issue of whether Bendectin causes birth defects. The jury returned a verdict in favor of Merrell Dow. *In re: Richardson–Merrell, Inc.: "Bendectin Products Litigation"*, 624 F.Supp. 1212 (S.D.Ohio 1985), aff'd, 857 F.2d 290 (6th Cir.1988), cert. denied, *Hoffman v. Merrell Dow Pharmaceuti-*

*cal, Inc.*, —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

**3.** This use of collateral estoppel, termed "defensive," has been approved of by the United States Supreme Court. See *Parklane Hosiery Co., supra* 439 U.S. at 329, 99 S.Ct. at 650.

(1979). The rule derived from the Supreme Court's examination of this issue is that a nonparty may be estopped if (1) he had a direct financial or proprietary interest in the prior litigation; and (2) he assumed control over the prior litigation. *Virginia Hosp. Ass'n. v. Baliles,* 830 F.2d 1308, 1312 (4th Cir.1987); *see also Alman v. Danin,* 801 F.2d 1, 4–5 (1st Cir.1986); 1B J. Moore, J. Lucas and T. Currier, Moore's Federal Practice ¶ 0.411[6], at 445 (2d ed. 1984). The *Montana* rule ensures that the nonparty was afforded his right to due process. *Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 338 (5th Cir.1982). If a nonparty had a direct financial or proprietary interest in the prior litigation, he had an incentive to litigate the issues raised in the previous suit fully. *Virginia Hosp. Ass'n, supra* at 1312. If the nonparty also had control over the prior litigation, he had the ability to ensure that the issues were fully litigated at that time. *Id.*

■ Merrell Dow recites a different standard to be employed when courts examine the collateral estoppel effect of a prior judgment on nonparties,[4] ignoring the Supreme Court precedent pronounced in *Montana* and its progeny. Nonetheless, the Court must evaluate the appropriateness of the application of collateral estoppel to plaintiffs in this consolidated action using the *Montana* rule.

■ Plaintiffs in these cases had no direct financial or proprietary interest in the outcome of the MDL Common Issues Trial or in any subsequent individual Bendectin action against Merrell Dow. To the contrary, those plaintiffs who specifically opted out of the MDL Common Issues Trial withdrew precisely so that they would not be bound by its outcome. Upon their withdrawal, plaintiffs severed any financial interest they previously had in the outcome of that consolidated trial. *See Lynch v. Merrell–National Laboratories,* 830 F.2d 1190, 1193 (1st Cir.1987); *see also In re Bendectin Cases,* No. 85–0996, 1986 WL 20466 (E.D.Mich.1986). Plaintiffs' undenia-

ble concern for a favorable outcome to the MDL Common Issues Trial or to other Bendectin trials does not constitute a financial or proprietary interest in the outcome. Mere academic interest in the determination of a question of law in a prior suit, or even a substantial interest in establishing favorable precedent under the doctrine of stare decisis, simply does not give rise to the presumption of financial or proprietary interest. *Virginia Hosp. Ass'n, supra* at 1313 *quoting* 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.411[6], at 446. Plaintiffs in this consolidated action had no financial stake in any previous Bendectin case and therefore cannot be estopped from litigating their claims on that basis.

■ The second inquiry, whether plaintiffs assumed control over any previous Bendectin lawsuit, dictates the same finding. Merrell Dow argues that plaintiffs in these cases participated in discovery in the MDL Common Issues Trial, rely on the same evidence presented in that action, and seek to prove the same contention litigated in that consolidated proceeding. This type of participation, however, does not amount to an exercise of control over the prior lawsuit. To have control over litigation, a party must have effective choice over which legal theories and proofs are advanced. *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir.1987). Examples of such control are: a president and sole shareholder controls his company; a parent corporation controls its subsidiary; and a liability insurer assumes control of the defense of the insured. *Id.* at 1174; *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 864 n. 3 (5th Cir.1985). It is simply not enough that a nonparty supplied an attorney to the previous plaintiff or is represented by the same law firm; participated in consolidated pretrial proceedings; urges the same facts or the same issues; or otherwise participated

---

4. Merrell Dow asserts that a nonparty may be held bound by the results of prior litigation where (1) the prior litigation was conducted on a representative basis; (2) a common interest is

involved in both the prior and current action; or (3) the nonparty has intentionally declined an opportunity to participate as a matter of litigation strategy.

in the prior action in a limited way. *Benson and Ford, Inc., supra* at 1174.

Moreover, plaintiffs in this consolidated action were not adequately represented in the MDL Common Issues Trial because their counsel participated in that proceeding. In the absence of an express or implied legal relationship between plaintiffs in this consolidated action and plaintiffs in the MDL Common Issues Trial, as a matter of law, adequate representation cannot be established. *Id.* at 1175.

Finally, plaintiffs may not be estopped from litigating their claims on the grounds that they had an opportunity to join in the MDL Common Issues Trial. A nonparty is not obliged to seize an available opportunity to participate in pending litigation which addresses a question of concern to the nonparty. *Id.* at 1176. Merrell Dow fails to demonstrate how plaintiffs in these consolidated cases had a direct financial or proprietary interest in the prior Bendectin litigation or how they assumed control over previous Bendectin cases. Consequently, plaintiffs may not be estopped from litigating their claims in this consolidated action.

### Lack of Epidemiological Proof

■ Merrell Dow advances a second, independent basis on which it moves for summary judgment: absent a new, published epidemiological study validating plaintiffs' claim that Bendectin ingestion during pregnancy causes birth defects, plaintiffs cannot meet their burden of proof concerning the crucial element of causation. Merrell Dow refers the Court to several opinions handed down in various federal and state courts.[5] In these cases, the courts examined the plaintiffs' evidence supporting causation of birth defects by Bendectin ingestion and held that plaintiffs' failure to provide any expert opinion based on epide-

miological data warranted entry of judgment in Merrell Dow's favor. Merrell Dow asks the Court to adopt these findings and enter summary judgment in its favor in this consolidated action.

Specifically, Merrell Dow urges the Court to conclude that the expert testimony proffered by the plaintiffs is inadmissible pursuant to Rule 703 of the Federal Rules of Evidence. Fed.R.Evid. 703 restricts the admissibility of opinions not based on facts or data "of a type reasonably relied upon by experts in the particular field." Fed.R. Evid. 703. Merrell Dow claims that the plaintiffs must prove a confirmed, statistically significant, epidemiological connection between Bendectin use and birth defects in order to establish causation.

Plaintiffs refute the defendant's contention that plaintiffs' burden of proof on the causation issue can only be met through epidemiological evidence. While plaintiffs contend that they will cite epidemiological evidence which demonstrates that Bendectin causes birth defects, they argue that the available epidemiological data suffers from methodological deficiencies and should not be deemed the only kind of evidence upon which experts would reasonably rely. Plaintiffs propose to establish the teratogenicity of Bendectin through the presentation of other studies using *in vitro* testing, structure activity analysis, sales chart analysis, and animal studies.

■ When examining the basis of an expert's opinion pursuant to Fed.R.Evid. 703, a court must determine whether the data underlying it is of the type reasonably relied upon by experts in the field without separately evaluating the trustworthiness of the particular data. *See Ramirez v. Richardson–Merrell, Inc.,* slip op. No. 85–1504 (E.D.Pa. September 2, 1986); *Lanzi-*

---

**5.** Several courts have entered judgment in the defendant's favor due to the absence of evidence sufficient to support a jury verdict for the plaintiffs: *Lynch v. Merrell National Laboratories,* 646 F.Supp. 856 (D.Mass.1986), aff'd, 830 F.2d 1190 (1st Cir.1987); *Hull v. Merrell Dow Pharmaceutical, Inc.,* 700 F.Supp. 28 (S.D.Fla.1988); *Koller v. Richardson–Merrell,* Civ. No. 80–1258 (D.D.C. June 30, 1989); *Ambrosini v. Richardson–Merrell, Inc.,* Civ. No. 86–278 (D.D.C. June

30, 1989); *DeLuca v. Merrell Dow Pharmaceutical, Inc.,* No. 87–226 (GEB) (D.N.J. June 7, 1989); *Monohan v. Merrell National Laboratories,* No. 83–3108–WP (D.Mass. December 18, 1987); *DePyper v. Navarro,* No. 83–303–467–NM (Mich.Cir.Ct., Wayne Co. March 10, 1989); *Bernhardt v. Richardson–Merrell, Inc.,* 723 F.Supp. 1188 (N.D.Miss.1989); *Daubert/Schuller v. Merrell Dow Pharmaceutical, Inc.,* 727 F.Supp. 570 (S.D.Cal.1989).

*lotti v. Merrell Dow Pharmaceuticals, Inc.*, slip op. No. 82–0183, 1986 WL 7832 (E.D.Pa. July 9, 1986). A trial court must not substitute its own views as to what constitutes reasonable reliance for those of the experts in the field. *Ramirez, supra* at 3; *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir.1989). The Court acknowledges the fact that there exist divergent views among experts in the medical field over whether epidemiological data is the only kind of proof which conclusively links Bendectin use to birth defects. The division in the scientific community over whether epidemiological studies should be relied upon exclusively necessitates the inescapable conclusion that experts may reasonably rely upon other types of data when forming an opinion as to the teratogenicity of Bendectin. *See Wells v. Ortho Pharmaceutical Corp.*, 788 F.2d 741, 745 (11th Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *see also Ramirez, supra* at 3. A contrary finding is unjustifiable without a pronouncement in this circuit that, as a matter of law, epidemiological studies are the sole basis upon which an expert may reasonably rely when forming an opinion on a drug's teratogenicity. *See Lanzilotti, supra* at 3.

After reviewing the voluminous materials submitted by Merrell Dow and the plaintiffs, including affidavits of experts, trial and deposition transcripts, summaries of published scientific studies, and decisions rendered by other courts faced with similar cases, the Court is convinced that there are genuine issues of fact which preclude entry of summary judgment in this consolidated action. When confronted with a 'classic battle of the experts, the jury must decide the victor.' *See Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1535 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). The Court is unwilling to invade the province of the jury and evaluate what weight and credibility the expert opinions deserve.

In sum, Merrell Dow fails to advance an adequate basis to support entry of summary judgment in its favor. Plaintiffs may not be collaterally estopped from litigating their claims in this consolidated action. Moreover, genuine issues of fact exist as to the teratogenicity of Bendectin. Accordingly, it is hereby ORDERED that Merrell Dow's motion for summary judgment under Fed.R.Civ.P. 56 is hereby DENIED.

IT IS SO ORDERED.