ROBERTSON, Justice:
The Circuit Court of the Second Judicial District of Hinds County, Mississippi, rendered judgment for $100,000.00, based on a jury verdict, in favor of plaintiff, Bob Lee Currie, and against defendants, Hearin-Miller Transporters, Inc. and W. F. Mann. The defendants appeal from that judgment.
This is the third case based on the same tragic automobile-tractor-trailer collision to reach this Court.
In Newman v. Hearin-Miller Transporters, Inc. and W. F. Mann, 214 So.2d 684 (Miss.1968), the trial judge in giving a directed verdict for the defendants when the plaintiff rested, said:
“I have decided as a matter of law that the Plaintiff has not sustained the burden of proof by a preponderance of the evidence and shown this truck was on the wrong side of the road. And, therefore, I have decided and you are directed to find for the Defendant.”
We affirmed the judgment of the trial court without opinion.
The second case was that of the heirs of Everett Wayne Price, the driver of the automobile, against Hearin-Miller Transporters, Inc. and W. F. Mann, 220 So.2d 813 (Miss.1969). That case was allowed to go to the jury, and the jury returned a verdict for the defendants. We again affirmed without written opinion.
The same witnesses testified in all three cases. The sole question in all three cases was whether the tractor-trailer crossed the center line, got in the wrong traffic lane, and thus negligently caused the fatal collision. The burden of proving this rested squarely on the plaintiff in all three cases. If, after all the evidence was in, there was not more than a scintilla of evidence supporting the plaintiff’s position, then the defendants were entitled to a directed verdict because Mississippi does not follow the scintilla rule. Berry v. Brunt, 252 Miss. 194, 172 So.2d 398 (1965).
W. F. Mann, the driver of the tractor-trailer unit, was the only eyewitness, and he was called as an adverse witness by the plaintiff in all three cases. He testified clearly, positively and unequivocally that after delivering a load of lime in his tank-trailer to a construction job near Hazle-hurst, Mississippi, on the night of June 18, 1966, he had a hamburger and cup of coffee at a little cafe near Hazlehurst, and headed back to Vicksburg via Utica. His brother, Donald Mann, also driving a tractor-trailer unit for Hearin-Miller, had headlight trouble, so they both stopped in Utica to fix the voltage regulator on Donald Mann’s tractor. They left Utica about 12:30 A.M. June 19th, with Donald Mann in the lead.
About 8 miles north of Utica on State Highway 27 as W. F. Mann was proceeding in a northerly direction down a slight decline and curve to the left, he noticed the lights of an oncoming vehicle shining over a small hill to the north. Mann testified that he immediately dimmed his lights and proceeded north in his proper lane. The southbound automobile topped the little hill in the proper lane, but, when about 125 feet from Mann’s tractor-trailer unit, drifted over the center line into Mann’s northbound lane, which would be the east lane of the highway. Mann immediately hit his brakes. He attempted to turn his unit to the right, but the car was upon him so quickly that he had no time to act.
The car first hit his left front bumper, fender and wheel a glancing blow, then hit the left saddle tank of the tractor and the left dual pusher wheel a terrific blow. The ladder, about midway down the left side of the trailer transport tank, was bent underneath, and the left rear dual wheels received the final blow. Mann was knocked to the floorboard of the tractor and it veered over on the east shoulder of the highway. Mann said he continued to hold on to the steering wheel with his left hand and as he began to pull on the steering wheel the unit moved from the east shoulder across the highway and ran into a *453 dirt bank on the west side. He testified positively and unequivocally that he kept his tractor-trailer unit in the proper northbound lane at all times, until after the impact when he lost control of his unit.
Both highway patrolmen Dillon, who investigated the accident, and McClain, who assisted him and also took pictures of the vehicles and the accident scene, testified that there was a gouged-out place in the asphalt about 16 inches east of the white center line of the highway in the tractor-trailer’s northbound lane, and that there was a yellow line on each side of the white center line. The left front wheel of the Price car was completely knocked off, leaving the axle bare, and both patrolmen testified that they traced the path of the car from the gouged out spot in the east lane to its final location about 145 feet away. They also traced the course of the tractor-trailer unit from this gouged-out spot to its final resting place about 154 feet away.
Both patrolmen testified that the skid marks south of the gouged-out spot in the paving were made by the tractor-trailer unit and were in its proper northbound lane, and that there was no evidence that the tractor-trailer unit ever crossed the center line until after impact when the driver lost control and it veered first to the right and then to the left across the highway to its final stopping place.
Edward McGuffee, a friend of all those in the Price car, testified that he had seen them in Vicksburg the night of the accident, and then came along after the accident and saw the Price car, the boys, and the accident scene. McGuffee testified that he had noticed a recent hole in the road on the west side of the center line about 75 or 80 feet from the gouged-out spot on the east side of the center line.
Maurice Little, who was driving Mc-Guffee’s car on the return from Vicksburg, testified in the Newman case that he also had noticed the hole on the west side of the center line but, of course, did not know when or what vehicle, if any, had made it. Little had died before the Currie case, so his testimony in Newman was read to the jury. Patrolman Dillon testified that he saw the hole that McGuffee mentioned, but that there were no marks or tracks of any kind leading to or from it.
The record thus stands with the uncon-tradicted testimony of the only eyewitness, W. F. Mann, being that he was proceeding in a northerly direction in the east lane of State Highway 27 when the Price automobile suddenly drifted over into his (Mann’s) lane, that he immediately applied his brakes and attempted to turn his unit to the right, but the Price car was already upon him, hitting his tractor first at the left front bumper and continuing on down the left side of the tractor and trailer until the final blow to the left rear wheels of the trailer.
The physical evidence apparent in the photographs introduced as exhibits, and the testimony of the two trained accident investigators Patrolmen Dillon and McClain, bear out and support Mann’s testimony of how the fatal accident happened.
The isolated hole in the asphalt, which McGuffee and Little mentioned, was not causally connected by them in any way with the accident. They did not and could not testify when, how or what made the hole. Although Patrolman McClain assisted in the investigation and took the pictures introduced as exhibits, he testified that he didn’t even notice the hole mentioned by McGuffee and Little. To try to figure out when, how and what caused this slight hole would require the wildest kind of conjecture, speculation and imaginative guessing. The mere mentioning of this hole by McGuffee and Little does not even amount to a scintilla of evidence. In Berry v. Brunt, 252 Miss. 194, 172 So.2d 398 (1965), we said:
“The Court has repeatedly held that in trials under the common law, to prove a ‘possibility’ only, or to leave the issue to surmise and conjecture, is never suffi *454 cient to sustain a verdict in a tort action. A mere scintilla of evidence of negligence is insufficient to make a jury issue. The scintilla rule of evidence is not recognized in this State.” (Emphasis Added). (Citing numerous Mississippi cases). 252 Miss, at 203, 172 So.2d at 402.
We deem it completely unnecessary and a waste of time to discuss W. F. Mann’s anguished remarks made at the scene immediately after the accident. Certainly he was upset and emotional. Any normal person involved in such an accident would have been worried and concerned about breaking the tragic news to the parents of the dead boys. Negligence cannot be inferred or presumed from such concern and solicitude.
In McConnell v. Eubanks, 193 So.2d 425 (Miss.1966), and in Denman v. Denman, 242 Miss. 59, 134 So.2d 457 (1961), we quoted with approval the following rule of law found in 38 Am.Jur., Negligence, section 345 at 1050 (1941):
“Thus, if an accident appears upon the evidence to be as consistent with the absence of negligence for which the defendant is responsible as with the existence of such negligence, the plaintiff must fail, and the case should not be left to the jury.’’ (Emphasis added).
In Ryals v. Douglas, 205 Miss. 695, 39 So.2d 311 (1949), this Court said:
“The rule is that the testimony of a witness which is uncontradicted, and who is not impeached in some manner known to the law, where he is not contradicted by the circumstances, must be accepted as true. It is true that the direct evidence of a witness may be contradicted by circumstances, but in such case the circumstances relied on for contradiction must be inconsistent with the truth of the testimony. ‘When the testimony of a witness is not contradicted, either by direct evidence or by circumstances, it must be taken as true.’ Stewart v. Coleman [& Co.], 120 Miss. 28, 81 So. 653.” 205 Miss, at 722, 39 So.2d at 317.
This rule of evidence was also quoted with approval in McConnell.
Our thoughts in this case were well expressed in Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953), when the Court there said:
“Reluctant as we are to disturb the verdict of the jury we cannot close our eyes to the well-established principle that verdicts must rest upon reasonable probabilities and not upon mere possibilities. Since no reasonable probability appears in this case it is our conclusion that the peremptory instruction requested by appellant should have been granted and the judgment of the lower court will accordingly be reversed and judgment will be here entered in favor of appellant.” 216 Miss, at 456-457, 62 So.2d at 571.
After the evidence for both sides was in, the trial court should have instructed the jury to return a verdict for the defendants. It follows, therefore, that the judgment for the plaintiff should be and is reversed and judgment rendered here for the defendants.
Reversed and rendered.
ETHRIDGE, C. J., GILLESPIE, P. J., and RODGERS, BRADY, SMITH, and HARPER, JJ., concur.
INZER and PATTERSON, JJ., dissent.