**Dana Michelle BERNHARDT, an infant, By and Through her natural guardians and parents, Brenda and Frederic BERNHARDT, and Brenda and Frederic Bernhardt, Plaintiffs,**

v.

**RICHARDSON–MERRELL, INC. and John Doe, Defendants.**

**No. DC85–39–B–D.**

United States District Court, N.D. Mississippi, Delta Division.

May 13, 1988.

On Motion to Reconsider April 24, 1989.

On Motion to Reconsider and Motion to Strike June 23, 1989.

Barry J. Nace, Washington, D.C., Charles M. Merkel, Clarksdale, Miss., for plaintiffs.

Christy D. Jones, Jackson, Miss., Frank Woodside, K.C. Green of Dinsmore & Shohl, Cincinnati, Ohio, for defendants.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

BIGGERS, District Judge.

The court has before it the motion of the defendant Merrell Dow Pharmaceuticals, Inc. for summary judgment to dismiss this action. Having read the parties' memoranda, examined the evidence and being fully advised of the premises, the court is in a position to rule on the merits.

■ As a basis for this motion, the defendant relies upon the medical opinion of Dr. John F. Jackson, who assumed that the plaintiff was conceived between fourteen to fifteen days after her mother's last menstrual cycle which allegedly occurred about May 24, 1978. In his affidavit, Dr. Jackson concluded that "the drug Bendectin did not cause the child to be born without fingers because the gestational age of the fetus was such at the time of the taking of the drug that the fingers on the left hand, if they were going to develop, would have already been to that stage of development which would have allowed the continued development of the extremeties." This conclusion is based upon an assumption of when the mother's last menstrual cycle occurred and when the date of conception

occurred. Because Dr. Jackson's conclusion assumed a genuine issue of material fact, it cannot serve as a basis for dismissal by summary judgment. Accordingly, it is ORDERED:

That defendant's motion for summary judgment be and is hereby DENIED.

## ON MOTION TO RECONSIDER

The court has before it the defendant's motion to reconsider the court's denial of its motion for summary judgment and the defendant's motion to strike the plaintiffs' submission of the affidavit of Dr. Stuart Newman. Having considered the parties' memoranda and supporting exhibits, the court is in a position to rule on the merits.

### I.

Dana Michelle Bernhardt and her parents brought this suit against the manufacturer of the drug Bendectin asserting that Bendectin caused a deformity of Michelle's hand and arm. Mrs. Bernhardt took Bendectin during her pregnancy with Michelle after her doctor, Dr. Hal P. James, prescribed it for morning sickness. The parties rely on the testimony of medical experts who reached opposite conclusions in determining whether Bendectin caused the plaintiff's birth defects. The defendant relies on the affidavit of Dr. John Jackson, a professor of medical genetics at the University of Mississippi. In his affidavit, Dr. Jackson indicated that certain parts of the body are completely formed during gestational stages and the formation cannot be reversed except by a traumatic event. According to Dr. Jackson, the arm buds begin to form on the fetus within thirty days from conception, the hand plate is formed by the thirty-eighth day and the elbow has formed and finger rays have split into fingers by the forty-fourth day after conception. Utilizing this information, Dr. Jackson concluded that Bendectin could not have caused Michelle's deformity because her mother took the drug fifty-four or fifty-five days after the conception of Michelle. Dr. Jackson also opined that Bendectin was not a teratogen, a drug which affects limb development.

In opposition to the defendant's motion for summary judgment, the plaintiffs submitted answers to the defendant's interrogatories which contained summaries of the plaintiffs' expert testimony. According to the plaintiffs, Dr. Melnick, Dr. Lord, Dr. Thiersch, Dr. Glauser, Dr. Brownlee, and Dr. Newman would testify that, based upon in vitro and in vivo animal studies, Bendectin was a teratogen which could affect limb formation within the first ten weeks of pregnancy. The plaintiffs also indicated that several doctors would testify that taking Bendectin during pregnancy as "prescribed by Dr. Clark (the prescribing obstetrician)" created a risk of the birth defects. (In fact, Dr. Hal Pearson James treated and prescribed Bendectin to Mrs. Bernhardt during her pregnancy). Dr. McBride, Dr. Done, Dr. Brownlee, Dr. Thomas, Dr. Melnick, Dr. Newman, Dr. Glauser and Dr. Lord would testify "with reasonable medical certainty, the cause of the limb defect that the infant plaintiff was born with was Bendectin."

### II.

Since the plaintiffs must establish that Bendectin caused the birth defect by reasonable medical certainty, they must present sufficient evidence to establish the existence of causation in order to survive the defendant's motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123 (5th Cir.1988).

Initially, the court denied the defendant's motion for summary judgment because Dr. Jackson based his opinion upon an assumption of when the conception of Michelle occurred. The defendant asked for reconsideration of its motion for summary judgment because Dr. Jackson based his assumption of when conception occurred on the plaintiff's answers to interrogatories. After considering the defendant's motion, the court gave the plaintiffs the opportunity "to rebut the defendant's contention that the fingers of a fetus were developed by the forty-fourth day after conception

[by pointing out] in writing what expert testimony [the plaintiffs had] to rebut this conclusion." Letter from law clerk to attorney for plaintiffs (Nov. 1, 1988). Instead of pointing out what evidence the plaintiff had submitted to address the issue of causation, the plaintiffs submitted an affidavit of Dr. Newman which indicated that Bendectin was a teratogen and it can affect the limb development within fifty days after conception. Dr. Newman also opined that "scientific studies and observations have shown" limb development can vary plus or minus ten days. The defendant moved to strike Dr. Newman's affidavit because the plaintiff failed to comply with the court's request and because the affidavit was untimely filed.

■ If a nonmovant needs further discovery to present evidence to oppose a motion for summary judgment, Rule 56(f) permits the nonmovant to request a continuance. Additionally, the court may permit parties to supplement evidence presented for consideration of a summary judgment motion. Fed.R.Civ.P. 56(e). In this instance, however, the plaintiff did not ask for a continuance and the court did not request supplemental evidence. Instead, the plaintiff filed an additional affidavit several months after all the evidence the parties wished to be considered was filed with the court. As a result, Dr. Newman's affidavit is not properly before the court and will not be considered.

### III.

■ The parties support their positions in this case by conflicting expert testimony. In addressing the motion for summary judgment, the court must consider the reliability and foundation of the experts' opinions. Fed.R.Evid. 703; *Washington v. Armstrong World Industries, Inc.*, 839 F.2d at 1123. An expert opinion must be based upon data reasonably relied upon by experts in the particular field of expertise testified to. Thus, the scientific theory on which an expert bases his opinion must be sufficiently recognized in his field. Fed.R. Evid. 703; *Soden v. Freightliner Corp.*, 714 F.2d 498, 505 (5th Cir.1983). Since

conjecture, speculation, and conclusory opinions have insufficient probative value, the court must determine whether the expert opinions have a scientific basis and factual basis.

■ The plaintiffs' experts have not indicated whether or not the animal studies upon which they rely are reasonably relied upon by experts in the field of embryology, epidemiology, or pharmacology. Fed.R. Evid. 703. Additionally, the plaintiffs' experts have not indicated what scientific material supports their conclusion linking Bendectin's effect on rats and rabbits to their conclusion that the drug similarly affects human fetuses. A conclusion that Bendectin could cause deformities in animals does not support a conclusion that *it does* cause birth defects in humans. *Lynch v. Merrell–National Laboratories*, 830 F.2d 1190 (1st Cir.1987). The courts in *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823 (D.C.Cir.1988), and *Hull v. Merrell–Dow Pharmaceuticals*, 700 F.Supp. 28 (S.D.Fla. 1988), noted that the overwhelming scientific data demonstrated that Bendectin was not a teratogen. In this case, there is nothing to indicate that the plaintiffs' expert opinions are based on studies generally accepted in the field of epidemiology, embryology, or pharmacology. In the absence of such proof, the court cannot conclude that the opinions of the plaintiffs' experts meet minimum standards of reliability.

Even if the court assumed Bendectin was a teratogen, the plaintiff failed to present a factual basis upon which an expert could conclude that it probably caused the plaintiff's deformities. According to Doctors Swan and Done, ingesting Bendectin during Mrs. Bernhardt's pregnancy created a risk of birth defects. Dr. Swan indicated the risk was statistically significant enough to establish a probable link between Bendectin and the plaintiff's birth defects. However, none of these doctors indicated whether the studies they relied upon were generally accepted in their fields of expertise. Moreover, the court cannot be sure the experts based their conclusions upon a diagnosis of Michelle Bernhardt because

**1192**

the experts assumed a Dr. Clark prescribed Bendectin to Mrs. Bernhardt, when, in fact, Dr. James prescribed Bendectin to Mrs. Bernhardt. There is no indication in the evidence before the court of who Dr. Clark is. The plaintiffs' experts simply concluded this drug caused the plaintiffs' injuries without applying an accepted scientific theory to an objective medical diagnosis of the plaintiff.

■ Trial courts cannot "accept uncritically any sort of opinion espoused by an expert merely because his credentials render him qualified to testify...." Whether an expert's opinion has an adequate basis and whether without it an evidentiary burden has been met are matters of law for the court to decide. *Richardson by Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829 (D.C.Cir.1988). In this case the plaintiffs failed to show an adequate factual and scientific basis to support their expert's conclusions. Consequently, the plaintiffs failed to present proof that would establish the issue of causation which is essential to their case. Accordingly, the defendant is entitled to summary judgment and its motion to reconsider will be granted.

Assuming *arguendo* that the tardy affidavit of Dr. Newman had been properly presented to the court, it suffers from the same flaws as those previously presented and would have been insufficient to overcome the defendant's motion for summary judgment.

■ Dr. Newman stated that a teratogen can affect the development of limbs at least fifty days after conception and that "scientific studies and observations have shown" that limb development in human fetuses can vary plus or minus ten days. Dr. Newman concluded that Mrs. Bernhardt did not take Bendectin too late to cause her child's injuries but failed to conclude that the plaintiff's injuries were probably caused by Bendectin. An opinion that Bendectin could have caused Michelle's injuries does not lead to the conclusion that it probably caused her deformities. Dr. Newman's opinion is based upon speculation and at most creates a negative inference which cannot establish the probable cause of the plaintiff's injuries. *See Washington*

*v. Armstrong Industries, Inc.*, 839 F.2d at 1123–24. Additionally, Dr. Newman failed to indicate what scientific studies he used to arrive at his conclusions; therefore, it too does not meet the minimum standards of reliability to be considered by a trier of fact.

An order will issue accordingly.

### ON MOTION TO RECONSIDER AND MOTION TO STRIKE

■ The court has before it the plaintiffs' motion to reconsider this court's opinion and order entered on April 26, 1989 and the defendant's motion to strike that motion as untimely. Rule 59(e) of the Federal Rules of Civil Procedure provides that "a motion to alter or amend shall be served not later than 10 days after entry of the judgment." The plaintiffs filed their motion more than 10 days after entry of the judgment of the April 26, 1989 judgment. This 10–day period is jurisdictional and cannot be extended by this court. *Washington v. Patlis*, 868 F.2d 172 (5th Cir.1989). Accordingly, the court cannot hear the plaintiffs' motion to reconsider and the defendant's motion to strike the plaintiffs' motion is GRANTED.

ORDERED AND ADJUDGED this, the 23rd day of June, 1989.