**Gazela A. BELL, Plaintiff,**

**v.**

**SWIFT ADHESIVES, INC., A DIVISION OF REICHHOLD CHEMCIALS, INC. and Ashland Chemical, Inc., a division of Ashland Oil Company, Defendants.**

**No. CV 491-172.**

United States District Court,
S.D. Georgia.
Savannah Division.

Oct. 13, 1992.

**1578**

Clarence L. Martin, Savannah, Ga., for plaintiff.

Fred S. Clark, Savannah, Ga., and Phillip S. McKinney and Anne E. Williams, Atlanta, Ga., for defendants.

## ORDER AND MEMORANDUM

NANGLE, Senior District Judge.

This case is before the Court on: (1) defendants' Motion to Exclude the Testimony of Plaintiff's Expert Witness; (2) defendants' Motion for Summary Judgment; (3) defendants' Motion to Dismiss Plaintiff's Complaint for Failure to Comply with the Pre–Trial Order; (4) defendants' Motion to Strike three of Plaintiff's Affidavits; (5) plaintiff's Motion to Strike Defendants' Supplemental Evidentiary Material and to Close the Evidentiary Record; and (6) plaintiff's Motions for Sanctions. For the reasons set forth below, the Court GRANTS the defendants' motion for summary judgment and DENIES the plaintiff's motions for sanctions.[1]

## BACKGROUND

Plaintiff Gazela Bell filed a products liability action for the wrongful death of her husband Ronnie Bell against Swift Adhesives, Inc. ("Swift") and Ashland Chemical Company ("Asland") in the Superior Court of Chatham County on June 1, 1988. Her complaint alleges that Ronnie Bell was exposed to Fome Bond and methylene chloride during his employment with Great Dane Trailers, Inc. and that this exposure caused liver cancer which led to his death on June 29, 1986. Ashland distributes methylene chloride. Swift manufactures and distributes Fome Bond which contains methylene chloride, 1,1,1–trichloroethane and chloroprene. Plaintiff contends that defendants' failure to provide adequate warnings of the dangers of their products caused her husband's death.

On December 21, 1990 plaintiff voluntarily dismissed the action in Superior Court. She refiled on June 12, 1991, and defendants removed the case to this Court on July 18, 1991.

## SUMMARY JUDGMENT

█ As the parties seeking summary judgment, defendants bear "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Trans. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). All reasonable doubts about the facts are to be resolved in favor of the non-movant, although the non-moving party bears the burden of coming forward with sufficient evidence of every element that he or she must prove. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). In this regard, "conclusory allegations without specific supporting facts have no probative value." *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985); *Gordon v. Terry*, 684 F.2d 736, 744 (11th Cir.1982).

In the instant action, plaintiff alleges that defendants' "carelessness, strict liability and gross negligence ... were the direct and proximate cause of the wrongful death of Ronnie L. Bell." Under each of the stated theories of liability, plaintiff has the burden of proving that her injuries were caused by her husband's exposure to defendants' products. *Wells v. Ortho Pharmaceutical Corp.*, 615 F.Supp. 262, 295 (N.D.Ga.1985), *aff'd mod. in part, remanded*, 788 F.2d 741 (11th Cir.1986); *Talley v. City Tank Corp.*, 158 Ga.App. 130, 279 S.E.2d 264, 269 (1981). Thus, summary judgment is appropriate here if plaintiff does not present evidence sufficient to raise a jury question on the issue of causation. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1985).

---

**1.** Given the Court's dismissal of the case on summary judgment, it need not address: defendants' motion to exclude testimony of plaintiff's expert witness; defendants' motion to dismiss plaintiff's complaint for failure to comply with pre-trial order; defendants' motion to strike plaintiff's affidavits; or plaintiff's motion to strike all supplemental evidentiary material submitted by defendants and to close the evidentiary record.

■ Further, because the mission of the summary judgment procedure is to "pierce the pleadings" and assess the proof to determine whether a trial is necessary, any affidavits offered in opposition to the motion must set forth "specific facts" that would be admissible in evidence in order to show that a genuine issue exists for trial. Fed.R.Civ.P. 56(e); Advisory Notes on subdivision e. This Rule applies equally to affidavits submitted by experts. While the expert may base his opinion on facts or data reasonably relied upon by experts in the field, and this data need not be admissible in evidence, Fed.R.Evid. 703, an expert's affidavit must nevertheless set forth specific facts in order to create an issue of fact for trial. *Evers*, 770 F.2d at 986. "Theoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert ... are [not] entitled to any weight when raised in opposition to a motion for summary judgment." *E.T. Barwick Industries v. Walter Heller & Co.*, 692 F.Supp. 1331, 1347 (N.D.Ga.1987), *aff'd*, 891 F.2d 906 (11th Cir.1987) (quoting *Reazin v. Blue Cross and Blue Shield of Kansas, Inc.*, 663 F.Supp. 1360, 1479 (D.Kan.1987)).

■ Finally, when causation is the issue, "courts are particularly wary of unfounded expert opinion." *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1223, 1249 (E.D.N.Y.1985), *aff'd*, 818 F.2d 187 (2nd Cir.1987). "The uncertainty of the evidence in [toxic tort] cases, dependent as it is upon speculative scientific hypotheses and epidemiological studies, creates a special need for robust screening of experts and gatekeeping under Rules 403 and 703 by the court." *Id.* at 1260; *see also American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir.1985); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123–24 (5th Cir.1988); *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987).

## ANALYSIS

### I. SUMMARY JUDGMENT

■ In support of her contention that exposure to defendants' products caused her husband's liver cancer, plaintiff relies solely on the depositions and affidavit of Dr. Janette D. Sherman, a physician specializing in internal medicine. On the issue of causation, Dr. Sherman states that "it is my opinion to a reasonable degree of medical and scientific (certainty) that Mr. Bell's cancer was caused by his ongoing exposure to the chemicals methylene chloride, 1,1,1–trichloroethane, and chloroprene." Affidavit of Janette D. Sherman, M.D., p. 2–3. She bases this conclusion primarily upon studies which found evidence of carcinogenicity in laboratory animals exposed to high levels of methylene chloride. In addition to the animal studies, Dr. Sherman relies upon her knowledge of toxicology and her professional experience in forming an opinion that exposure to methylene chloride caused the death of Ronnie Bell.

Although courts have recognized the relevance of animal studies in some toxic tort cases, *see Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1535 (D.C.Cir.1984), they have tended to view such studies with suspicion, and several courts have specifically held that animal studies alone cannot prove causation in humans. "[Animal studies], singly or in combination, do not have the capability of proving causation in human beings in the absence of any confirmatory epidemiological data." *Lynch v. Merrell–National Laboratories*, 830 F.2d 1190, 1194 (1st Cir.1987); *accord Viterbo*, 826 F.2d at 424 (animal study is evidence only that chemical in question may produce some "unidentified effect on humans"); *Bernhardt v. Richardson–Merrell, Inc.*, 723 F.Supp. 1188, 1191 (N.D.Miss.1988), *aff'd*, 892 F.2d 440 (5th Cir.1990). One court has gone so far as to hold that animal studies "are of so little probative force and are so potentially misleading as to be inadmissible. They cannot be the predicate for an opinion under Rule 703." *In re Agent Orange*, 611 F.Supp. at 1241. *See also Delores Miles v. Swift Adhesives, Inc., et al.*, No. CV489–150, pp. 6–7 (S.D.Ga. May 9, 1990) (court refused to allow plaintiff to carry causation burden with one animal study); *Lois G. Ray v. PPG Industries, Inc., et al.*, No. CV2609, p. 15 (N.D.Ga.

December 17, 1991) (court took a "cautious view" of animal studies and found that the animal studies relied upon by expert were not relevant in predicting carcinogenic effects of trichloroethane on humans).

Nothing in the record persuades this Court to depart from the precedent set in Georgia federal district courts as well as in other circuits by viewing animal studies favorably. Dr. Sherman did not attach copies of the studies to her affidavit, instead she enclosed a lengthy bibliography. Fed.R.Civ.Pro. 56(e). She fails to provide details of the evidence reported in the studies cited in the bibliography, and makes a blanket statement that these studies are reasonably relied upon by experts in the field. She also fails to specifically cite any scientific evidence to support her conclusion that the results of the animal studies are relevant in predicating the carcinogenic effects of methylene chloride on humans. *See Bernhardt*, 723 F.Supp. at 1191–92; *Viterbo*, 826 F.2d at 424. Thus, Dr. Sherman gives no reason why this Court should depart from precedent and allow plaintiff to rely primarily upon animal studies to carry her burden on the issue of causation.

Aside from the animal studies, Dr. Sherman's affidavit sets forth no "specific facts" as a basis for her opinion concerning the cause of the decedent's liver cancer. *Evers*, 770 F.2d at 986. She refers to her experience in the field of toxicology and states that she reviewed Bell's medical records. However, she does not discuss the particular aspects of the medical records which led her to her conclusion, and she does not adequately discount other possible causes of the decedent's cancer. For example, she claims to have taken into account the fact that Bell was a chronic carrier of the hepatitis B virus (as indicated in Bell's medical records from the National Institutes of Health and blood donation records from the Red Cross), yet she does not explain her rejection of the virus as the cause of Bell's cancer. Defendant's expert, Dr. Raymond Harbison, cites studies which show that the hepatitis B virus is implicated in the cause of 80% of cases of liver cancer. Dr. Sherman does not offer any evidence to contradict this data. Thus,

Dr. Sherman does not adequately demonstrate that exposure to defendants' product was the more likely cause of the decedent's death than any other possibility.

Moreover, Dr. Sherman's depositions reveal that she is unfamiliar with how the Environmental Protection Agency ("EPA") and the Internal Agency for Research on Cancer ("IARC"), classify the chemicals at issue in this case. She incorrectly stated that the regulatory agencies classify methylene chloride, 1,1,1–trichloroethane and chloroprene as human carcinogens. Deposition of Dr. Sherman, July 24, 1990, pp. 91 & 97. However, the EPA classifies methylene chloride as a Class B2 carcinogen (inadequate evidence of carcinogenicity in humans) and 1,1,1–trichloroethane as a Group D carcinogen (inadequate evidence of carcinogenicity in animals). IARC classifies both methylene chloride and 1,1,1–trichloroethane as Group 3 carcinogens, meaning that the chemicals cannot be classified as to their carcinogenicity in humans (IARC, 1987). Moreover, neither the American Conference of Governmental and Industrial Hygienists nor the Occupational Safety and Health Administration (OSHA) have concluded that the chemicals are human carcinogens. Plaintiff's Supplemental Response to Defendant's Motion to Dismiss, Exhibit A, p. 10. Chloroprene is not even designated as a known animal carcinogen by either the EPA or IARC. Affidavit of Dr. Raymond Harbison, January 8, 1992, p. 17. Dr. Sherman's confusion regarding the classifications raises serious doubts as to her qualification as an expert. More importantly, the classifications indicate that health and governmental agencies have not found a causal relationship between the chemicals at issue and cancer in humans.

Under Georgia law, plaintiff must show, to a "reasonable degree of medical certainty," that defendants' products were responsible for her husband's lung cancer in order to recover. *Parrott v. Chatham County Hospital Authority*, 145 Ga.App. 113, 243 S.E.2d 269, 270 (1978); *Wells v. Ortho Pharmaceutical Corp.*, 615 F.Supp. 262, 295 (N.D.Ga.1985), *aff'd, mod. in part, remanded*, 788 F.2d 741, 743 (11th Cir.1986), *reh'g denied, en banc*, 795 F.2d 89 (11th

Cir.1986), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). To meet this burden, plaintiff has submitted the depositions and affidavit of Dr. Sherman. Dr. Sherman relies predominantly upon animal studies in forming her opinion that exposure to defendants' products, methylene chloride, 1,1,1-trichloroethane, and chloroprene, caused the liver cancer which led to Ronnie Bell's death.[2] The Court agrees with defendants that plaintiff has failed to produce evidence sufficient to create an issue of material fact with respect to causation and GRANTS summary judgment on that ground.

## II. Sanctions

Plaintiff argues that sanctions are warranted because defendants have filed "friv-olous motions and evidentiary material in this matter." Both parties in this case have submitted thousands of pages to the Court, many of which were unnecessary and repetitious. This Court will not waste any more of its valuable time considering these motions for sanctions. However, the Court does note that it is unaware of any rule that would prohibit sanctioning both parties if necessary. Accordingly, plaintiff's motions for sanctions are DENIED.

[2]. Defendants have also argued that plaintiff has not presented adequate evidence that the decedent was exposed to hazardous levels of methylene chloride, 1,1,1-trichloroethane, and chloroprene. Plaintiff submitted the affidavits of Dr. Harold Zeliger and James Ervin, a former Great Dane employee, concerning the concentration levels of these chemicals in the workplace. Dr. Zeliger testified that he formulated his opinion based upon the testimony of James Ervin as well as a "test conducted by a Great Dane employee". Plaintiff offered no evidence as to who conducted this test or the procedures employed.

James Ervin testified that he performed the same job as the decedent, but admits that he has no personal knowledge of the decedent's work or exposure history.

The Court need not address this issue given its disposition of the case. However, this Court, as was the *Miles* court, is persuaded by defendants' arguments regarding the evidence of the decedent's exposure to the chemicals. Dr. Sherman's reliance on this evidence in formulating her opinion further diminishes the weight accorded to her depositions and affidavit.