656 So.2d 1199 (1995)
MATERIALS TRANSPORTATION COMPANY
v.
Douglas Henry NEWMAN.
No. 91-CA-01265-SCT.
Supreme Court of Mississippi.
June 8, 1995.
*1200 Diane V. Pradat, Joseph L. McCoy, McCoy, Wilkins, Stephens & Tipton, Jackson, for appellant.
John S. Knowles, III, Brantley & Knowles, Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
This appeal concerns three tort and evidence issues relating to products liability defense  whether any alleged misuse of the product, assumption of the risk, or an open and obvious defense is applicable to bar recovery. The judgment of the Hinds County Circuit Court awarded the plaintiff, Douglas Henry Newman (Newman) $100,000.00 as against Materials Transportation Company (Materials). Aggrieved, Materials filed this appeal on the following issues:
1) DID THE TRIAL JUDGE ERR IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE OF A MISUSE OF THE PRODUCT WHICH SHOULD HAVE RELIEVED THE MANUFACTURER OF LIABILITY?
2) DID THE TRIAL JUDGE ERR IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE OF NEWMAN'S CONTINUED PRODUCT USE DESPITE AN OPEN AND OBVIOUS DANGER, WHICH SHOULD HAVE RELIEVED THE MANUFACTURER OF LIABILITY?
3) DID THE TRIAL JUDGE ERR IN ALLOWING OPINION TESTIMONY OF NEWMAN'S EXPERT WITNESS?
Finding no error, this Court affirms the circuit court's judgment for $100,000.00 in favor of the plaintiff.

II. STATEMENT OF THE FACTS
Newman, who worked at Packard Electric in Brookhaven, Mississippi, sustained a personal injury from an industrial accident which occurred January 20, 1988. Newman worked in the shipping department driving a towmotor, more commonly known as a forklift. The towmotor runs on a battery which weighs approximately 1800 pounds and which could require changing up to four times a work shift. To change the battery, Newman drove the forklift to the location of the battery changer, the piece of equipment which is the focus of this appeal. The battery changer, bought in about 1985, was designed to assist the forklift operator in removing a weak battery and replacing it with a charged battery without manual use of a crow bar, which was once standard procedure. The changer was manufactured by Materials.
To change a battery, Newman disengaged the battery and fastened it to a cable. Once the battery was hooked, Newman manually winched the battery from its seat and into the battery changer with the aid of rollers. Newman stood at the back end of the battery changer while operating the winch. There was a battery safety stopper which held the battery in place once it was on the rollers. However, according to Newman, the safety stopper and the lock switch were installed in *1201 front of the machine and were therefore inaccessible to the operator while at the back end of the machine with the winch. The back end of the battery changer had no lock to hold the battery in place once it was on the rollers. If the operator released the winch, the winch would flywheel, dropping the battery off the end of the rollers.
On the occasion Newman was injured, he had an assistant with him because "we knew the thing was dangerous, and it would get on you." In this case, the rolloff occurred when Newman and his assistant were installing a charged battery. The safety backstop was not in place; they had not engaged the flip lock because, as stated above, the locking mechanism was located at the front end of the battery changer, but Newman and his assistant, of necessity, were working at the back end of the battery changer. The battery rolled off the front part of the machine and caused the changer to roll back toward the operators, kicking Newman into the air. Newman held onto the changer in an effort to keep it from landing on his assistant.
Newman admitted that he knew the changer was dangerous. He also admitted that the changer was the easiest way to change the battery. Following the incident, Newman went to the hospital, complaining of sharp back pains which radiated down to his foot. Newman underwent an operation to remove a herniated disc, which lessened his pain to a tolerable level.
At trial Newman stated that nothing on the machine needed repairing, but that it just would not work safely because of the way it was designed. He testified that with two people working together, the flip switch could be activated; one person could physically hold the battery on the rollers while the other flipped the lock switch and secured the battery with the safety backstop. However, Newman stated that no one person could push the battery into the carriage and hold it there long enough to activate the flip lock, given the weight of the battery.
Boyce White, Newman's assistant, testified that the weight of the battery on the roller carriage made the rollers dip down toward the front. White stated that no one would flip the safety switch because the battery could potentially roll off and pin one's hand between the towmotor and the battery or between the battery and the floor.
White stated that everyone knew the changer was likely to drop batteries. White further testified that the weakness of the carriage made the changer drop batteries; once the battery began to roll, it couldn't be stopped with the winch because of the battery's weight. In White's opinion, Newman was hurt not because the changer hit Newman, but because Newman grabbed onto the bucking changer to keep it from hitting White.
David Thompson, a co-worker of Newman's, testified that he had used the battery changer. Thompson stated that the crank would not pull the battery high enough onto the changer to allow the operator to activate the flip switch. Thompson stated that even if the switch was flipped, the weight of the battery pressing upon the backstop required a worker to first pry the battery off the backstop. Thompson said no pry bars were available to use with the changer and the changer bore no warnings concerning its tendency to drop batteries. Thompson conceded on cross-examination that he was unsure whether a person could push the battery high enough into the carriage to flip the switch because no one had ever tried.
No issue is raised as to the physical damage claimed by Newman, which was supported by medical testimony. Newman returned to light duty on February 22, 1988, after his injury on January 20, 1988. Newman still feels intermittent pain in his hip and back and suffers cramps in his calf muscle and foot which keep him awake at night. Newman can no longer do heavy work at the plant, but his new job does not require it. In addition, he cannot jog or play softball. The medical expenses related to Newman's injury total $7,965; his lost wages are $2,000.
Newman called William A. Jones, Vice-President of Materials, as an adverse witness. Jones testified that he believed the changer arrived at Packard Electric in the same condition as manufactured. Jones stated that Packard employees had moved the anchor chains on the changer from the side *1202 of the machine to the bottom of the machine. The changer had a one ton capacity and Jones had the changer measured for stress analysis on its carriage.
Newman also called Dr. Percy Miller, a professional engineer, who offered his opinion that the changer was defective for several reasons. First, there was no lock on the winch to hold the battery in place. Second, the winch was not powerful enough to hold the battery in place and a significant portion of the battery was constantly pulling off the rollers. Third, the weight of the battery tilted the front end of the rollers toward the floor at all times, so the battery continually pulled toward the floor.
Dr. Miller stated that a better design would make the roller carriage level when weight is placed upon it and would include a lock for the winch. In addition, the design of the lever operating the safety backplate could be improved for safe and easy unlatching. Dr. Miller had never worked with or designed parts for this type of machine.
At the close of Newman's case, Materials moved for a directed verdict. Materials relied on an open and obvious danger defense as a bar to strict liability. Newman stated that he alleged negligent design, strict liability, and breach of warranty. Newman argued that when design is negligent, a defendant cannot use the "open and obvious" defense as a bar to recovery. The trial court overruled Materials' motion.
William Jones again took the stand at Materials' request. Jones testified that two people could easily push the battery back into the carriage far enough to engage the safety backstop when loading a battery, either manually or with a pry bar. Jones stated that the accident could not have happened if the backstop had been in place and that he saw no design flaws to the machine if used properly. Jones stated that the machine was built to the state of the art at the time and Newman was injured only because he used the product improperly. Jones testified that he could have designed a machine with a powered winch for the battery weight because his company makes winches for even larger batteries.
The parties stipulated that Dr. Richard Forbes, a mechanical engineer, was qualified to testify as an expert. Forbes testified that the changer had no design or manufacturing defect. The mechanical advantage provided by the gears in the changer reduced by about ten pounds the pull needed to bring up the battery. The fact that the chain did not pull the battery completely into the changer carriage was not a defect, according to Forbes, because manually pushing the battery up would involve 140 pounds of pull; anyone who can perform a pull up could easily accomplish a pull of 140 pounds.
The jury found the product defective and awarded $100,000 in damages. Materials moved for a Judgment Notwithstanding the Verdict or a New Trial (JNOV), which the circuit court denied. This appeal ensued.

III. ANALYSIS

1) DID THE TRIAL JUDGE ERR IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE OF A MISUSE OF THE PRODUCT WHICH SHOULD HAVE RELIEVED THE MANUFACTURER OF LIABILITY?
Materials argues that Newman's use of the changer, with the safety backplate disengaged, is an unforeseeable misuse of the battery changer. In Mississippi, however, misuse as a bar to recovery for products liability is a question of fact for the jury. Early-Gary, Inc. v. Walters, 294 So.2d 181, 186 (Miss. 1974); see also Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir.1975) (recognizing misuse as question of fact in Mississippi).
The jury implicitly found no unforeseeable misuse, given its verdict for Newman. Since our caselaw specifically provides that the question of product misuse is a jury question, the trial court committed no error in upholding the jury's decision.
Generally, this Court will only reverse a trial court's denial of JNOV if, after considering the evidence in the light most favorable to the nonmoving party, there is no credible evidence supporting the jury's verdict. Any conflicting evidence offered by the moving *1203 party is disregarded. Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690, 693 (Miss. 1983). There was evidence presented tending to show that Materials was aware that this lockplate was dangerous; therefore, the issue of lack of foreseeable misuse is without merit.

2) DID THE TRIAL JUDGE ERR IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE OF NEWMAN'S CONTINUED PRODUCT USE, DESPITE AN OPEN AND OBVIOUS DANGER, WHICH SHOULD HAVE RELIEVED THE MANUFACTURER OF LIABILITY?
In Mississippi, the open and obvious danger defense to negligence in products liability is no longer a complete bar to recovery. Tharp v. Bunge Corp., 641 So.2d 20, 25 (Miss. 1994).[1] This Court has stated that application of the comparative negligence doctrine now supplants the "open and obvious" defense. Tharp, 641 So.2d at 25. As for strict liability, this Court has held that the "open and obvious" or "patent danger" defense does not bar recovery. Sperry-New Holland v. Prestage, 617 So.2d 248, 256 n. 4 (Miss. 1993).
Materials' argument is that the open and obvious defense bars recovery in products liability. Our law is clear that the "open and obvious" defense bars recovery on neither a theory of negligence nor strict products liability. Consequently, this issue is without merit.
Materials also urges that Newman's assumption of the risk should have barred recovery. However, Materials did not submit a jury instruction on assumption of the risk.[2] Failure to request an instruction at trial works to bar assertion of error on appeal. Nichols v. Tubb, 609 So.2d 377, 386-89 (Miss. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 63, 126 L.Ed.2d 33 (1993). This argument is without merit.

3) DID THE TRIAL JUDGE ERR IN ALLOWING OPINION TESTIMONY OF NEWMAN'S EXPERT WITNESS?
At trial Materials did not object to Dr. Miller's opinion on the ground that it lacked scientific or factual basis.[3] In addition, Materials did not claim in its motion for new trial that Dr. Miller's opinion was erroneously admitted because it lacked scientific or factual basis. Where a party neither provides the specific grounds for an objection at trial nor asserts the issue on motion for new trial, this Court need not consider any alleged error on appeal. Anderson v. Jaeger, 317 So.2d 902, 906-07 (Miss. 1975).
Even examining this issue on the merits, we find no cause for reversal. This Court will reverse for admission of expert testimony only when the trial court abused its discretion. Dedeaux v. J.I. Case Co., 611 So.2d 880, 886 (Miss. 1992). The sufficiency of foundational facts or evidence on which to base an opinion is a question of law. Gulf Ins. Co. v. Provine, 321 So.2d 311, 314 (Miss. 1975). These facts must afford a "reasonably accurate basis" for the expert's conclusion. Gulf Ins. Co., 321 So.2d at 314. Expert testimony must be consistent with scientific principles "as established by the laws of physics or mechanics." Id. The scientific principles underlying an expert's opinion must be generally accepted by practitioners *1204 in the expert's field. May v. State, 524 So.2d 957, 963 (Miss. 1988); M.R.E. 702, Comment.
There is no indication that the scientific principles underlying Dr. Miller's opinion on design defects are inconsistent with the field of mechanical and safety design. Dr. Miller testified that as a result of his training and experience, he was of the opinion that the changer had several defects in design. Dr. Miller stated that the changes in design he recommended were "common knowledge in machine design."
While neither Newman nor Materials thoroughly examined Dr. Miller regarding the basis of his testimony, this does not render his testimony inadmissible. Predicate facts supporting expert testimony need only be "available in some colorable form." Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1165 (Miss. 1992). Dr. Miller's testimony that common knowledge supported his findings is sufficient to meet the Flight Line standard, as neither side fully explored this issue.
Dr. Miller acknowledged he did not test the carriage for the feasibility of his design recommendations. Materials argued that, without testing, Dr. Miller's opinion was insufficient to meet minimum standards of reliability. Materials relies on Bernhardt v. Richardson-Merrell, Inc., 723 F. Supp. 1188, 1191 (N.D.Miss. 1988), aff'd 892 F.2d 440 (5th Cir.1990).
However, Bernhardt involved more than a simple lack of testing. Over objection by the defense, the plaintiff's expert stated that a particular drug's application led to deformities; no testing or theory was offered to support this opinion. Bernhardt, 723 F. Supp. at 1191. In fact, the plaintiff's expert opinion was contradictory to the opinion held by an overwhelming majority of the scientific community. Id.
There is no such showing in the instant case. Because Materials did not explore the scientific underpinnings of Dr. Miller's testimony, there is little in the record on this point. As a result, Dr. Miller's opinion is admissible without a showing of those facts. The burden of producing preliminary facts for admissibility of evidence is on the party who wishes to admit the evidence, when a "proper objection (to the evidence) is made." State v. Williams, 315 N.W.2d 45, 52 (Iowa 1982). Since Materials made no such objection at trial, the admissibility of Dr. Miller's opinion was unquestioned. There is no merit to this issue.

IV. CONCLUSION
No issue presented warrants reversal of this case. Accordingly, the judgment of the Hinds County Circuit Court is affirmed.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] This Court notes that the legislature has reestablished both the open and obvious danger doctrine and the assumption of the risk doctrine as bars to recovery in products liability actions if the product allegedly fails to adequately warn a consumer of its danger. Miss. Code Ann. § 11-1-63 (d, e) (Supp. 1994) (effective July 1, 1993). However, since the trial court entered judgment before the effective date of the statute, this Court does not address these legislative enactments.
[2] D-13 was the only instruction submitted by Materials which comes partly addressed assumption of the risk. However, this instruction fails to mention a voluntary undertaking of the danger so as to assent to the dangerous condition. This element is required for an assumption of the risk defense. Nichols v. Western Auto Supply, Inc., 477 So.2d 261, 264 (Miss. 1985).
[3] Materials did object on the ground that Dr. Miller's testimony, on a theory in conflict with the open and obvious defense, was not legally tenable and thus irrelevant. See Melton v. Deere & Co., 887 F.2d 1241, 1245 (5th Cir.1989), abrogated by Sperry-New Holland v. Prestage, 617 So.2d 248, 256 n. 4 (Miss. 1993). However, this objection had no bearing on the factual or scientific foundation of Dr. Miller's opinion.