KITCHENS, Justice,
dissenting:
¶ 65. The majority reverses and renders the present case for two reasons. First, the majority finds that the trial court erred by denying Mine Safety Appliance Company’s.(MSA’s) motion for judgment notwithstanding the verdict (JNOV) on Huey Holmes’s failure-to-warn claims, because Holmes had made an inadequate-warnings claim, as opposed to a claim for lack of any warnings. Second, the majority holds that the trial court erred by denying MSA’s motion for JNOV on Holmes’s design-defect claim, which it found to have been obviated by Holmes’s testimony at trial that he never changed the filter in the Dustfoe 66 respirator. I disagree and would affirm the denial of JNOV to MSA by the Circuit Court of Jefferson County.
I. Reliance on given warnings did not constitute an element of Holmes’s claim against MSA, because no warning was given that the Dustfoe 66 respirator’s filter could fail in conditions of high humidity.
¶ 66. It is true, as the majority relates, that where “a plaintiff complains that a given warning was defective, the plaintiff must have read and relied upon the defective warning to complain of it.” Maj. Op. ¶ 41 (quoting Union Carbide Corp. v. Nix, 142 So.3d 374, 390 (Miss.2014) (citing Palmer v. Volkswagen of Am., Inc., 904 So.2d 1077, 1083 (Miss.2005))). But in cases in which a plaintiff has claimed “that certain warnings which were not given, should have been given,” this Court has held that “reliance is not an element of an inadequate warnings case.” Nix, 142 So.3d at 390 (citing Palmer, 904 So.2d at 1083) (emphasis added). This Court reasoned that a plaintiff “can certainly not be expected to show reliance on a warning which was not given.” Id. “[I]f a plaintiff complains that a given warning was defective, the plaintiff must have read and relied upon the defective warning to complain of it.” Id. (emphasis added).
¶ 67. The majority states that, “[t]he current allegation is that the warnings MSA provided were defective because they failed to warn of risks associated with using the Dustfoe 66 respirator around res-pirable silica and in humid conditions” and that “Holmes simply argues the warnings provided by MSA were inadequate.” Maj. Op. ¶ 42, 43. This majority reverses the trial court’s denial of MSA’s , motion for JNOV because Holmes presented no evidence that he had relied on the given warnings. Further, the majority applies Nix in the context of a claim of a defective warning, which requires that the plaintiff read and rely upon the given instructions. Nix, 142 So.3d at 390 (citing Palmer, 904 So.2d at 1083). But here, whether Holmes read or relied on the given warning is of no moment, because MSA provided no warning at all that the Dustfoe 66 could fail in high humidity. This is not a defective warning claim. Rather, it is an absent warning claim.
¶ 68. Holmes claimed that:
[T]he Defendants sold non-air supplied hoods or other non-air supplied equipment that was'purportedly adequate for operations with silica or which Defendants knew were being used for such operations without warnings or with cautions, which were inadequate for the dangers involved in this operation. Further, Defendants sold masks and respirators which were wholly inadequate and not approved for blasting operations or other operations with silica-containing, products. These masks and respirators would not protect the workers from the dangerous silica and added to, and in *459 creased the risk of, exposure to these dangerous products. Even when air-supplied hoods and respirators were used, the Defendants sold non-approved air-supplied hoods or sold such hoods without adequate, intelligible and understandable warnings and instructions, which would ensure that the users would be protected. These hoods were defective by reason of their design, marketing, and their foreseeable use or misuse. Thus, because of the negligence, design defects, and marketing defects (including using air fed hoods), the users were breathing contaminated air which contained dangerous levels of free silica and other toxic products of abrasive blasting, when used in their usual, customary, and expected way.
The corporate representative for MSA, Charles Seibel, conceded in a deposition that, in conditions of high humidity, the Dustfoe 66 had the potential to expose the user to respirable silica. In spite of this, MSA issued no field notices, warnings, or use limitations to explain to the user the potential for degradation in humid conditions. Further, Dr. James Johnson, called by MSA as an industrial hygienist, provided the following testimony:
Q: But MSA knew then that the electrostatic filter, that moisture would cause degradation, didn’t they?
A: Well, they knew that it was an issue that needed to be evaluated and managed and improved.
Q: And they didn’t put anything on their respirator to tell folks in Mississippi they need to be careful wearing that mask in high humid conditions, did they?
A: They didn’t put any warnings on it, no.
(Emphasis added.)
¶ 69. The Dustfoe 66 respirator and its accompanying filter contained the following admonition:
Approved for protection against the inhalation of dusts that are not significantly more toxic than lead (dispersoids or particulate matter formed by the disintegration of solid materials by such processes as crushing, grinding, and abrading), pneumoconoisis-producing mists (liquid dispersoids formed by the disintegration of a liquid by such processes as spray cooling and atomizing), and chromic acid mist as produced in chromium plating.
The purported warnings incorporated the following caution language: “[t]his respirator removes only dispersoids from the air. It gives no protection against gases, vapors, or insufficiency of oxygen.” This is more a disclaimer than a warning, and it is clear that Dustfoe 66 users were not put on notice that the respirator’s filter could fail in humid climates such as Mississippi’s.
¶ 70. As such, “[t]he absence o[f] a warning is the gravamen” of the plaintiffs claims here, and Holmes cannot “be expected to show reliance on a warning which was not given.” Palmer, 904 So.2d at 1083 (emphasis added). In that case, this Court held that “[t]he plaintiffs ... overlook the critical reality that the inadequate warnings claim (including their claim that the sun visor warning was inadequate) was rejected by the jury.” Id. at 1085. The Court continued: “[s]ince the Palmers were unable to convince the jury that the sun visors’ warnings were defective, they cannot now credibly argue that, ‘[had they] heeded the sun visor warnings, they would have read the manual and encountered the potentially misleading picture and caption.’ ” Id. The present case is different. The jury found in favor of Plaintiff Holmes and awarded damages. The trial court denied MSA’s motion for JNOV. I do not agree with the majority that the denial of JNOY ought here be reversed, because I *460 cannot- find that “the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity .of a trier of fact has been obviated.” Sherwin-Williams Co. v. Gaines ex rel. Pollard, 75 So.3d 41, 43 (Miss.2011).
¶ 71. The present case more resembles Nix, in which this Court affirmed the denial of JNOV, because “ ‘certain warnings which were not given,’ namely that asbestos causes cancer ..., ‘should have been given.’ ” Nix, 142 So.3d at 390 (quoting Palmer, 904 So.2d at 1083). The Court observed that “Nix testified at length about his experience with family members with cancer and stated that if the warning [Union. Carbide had provided him] had used the word ‘cancer,’ he would have tried to find another job.” Nix, 142 So.3d at 390. Therefore, “Union Carbide essentially argues that Nix failed to rely on instructions that did not exist.” Id. The same can be said of MSA here, which asserts, in essence, that Holmes failed to read[12] and to rely upon warnings which had not been given at all, and thus were not available for reading by Holmes or for anyone to have read to him. No warning appeared which advised Holmes or his employer, T.P. Groome, that humidity could render the respirator’s filters wholly ineffective to protect users against inhalation of respira-ble silica.
¶ 72. I therefore would affirm the denial of JNOV to MSA by the Circuit Court of Jefferson County.
II. Whether Holmes’s testimony that he never once changed the filter in his Dustfoe 66 respirator operated to bar his design-defect claim and to override the jury’s determination that MSA was 90% liable for his injuries.
¶ 73. The majority correctly relates Holmes’s testimony that he had used only one filter when operating the Dustfoe 66 respirator during the entire course of his employment at T.P. Groome. The’majority also is correct that, in order to allow recovery, a jury must find either that the plaintiff “did not misuse the product or that the unusual use of the product was one that the manufacturer and seller were expected to foresee and guard against.” Early-Gary, Inc. v. Walters, 294 So.2d 181, 186 (Miss.1974). See also Ford Motor Co. v. Matthews, 291 So.2d 169, 175 (Miss. 1974) (“The basic authority for this position is Comment (h) Rest. (2d) Torts s 402A, which reads in part: ‘A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling ... the seller is not liable.’ ”), overruled on other grounds by Sperry-New Holland v. Prestage, 617 So.2d 248 (Miss.1993).
¶ 74. This Court long has held that “the question of misuse is a question of fact.” Walters, 294 So.2d at 186. And “misuse as a bar to recovery for products liability is a question of fact for. the jury.” Materials Transp. Co. v. Newman, 656 So.2d 1199, 1202 (Miss.1995) (citing Walters, 294 So.2d at 186; Edwards v. Sears, Roebuck & Co., 512 F.2d 276, 289 (5th Cir.1975)). In Newman, for instance, this Court affirmed denial of a JNOV to the defendants. Newman, 656 So.2d at 1202. There, “[t]he jury implicitly found no unforeseeable misuse, given its verdict for Newman.” Id. Noting that “this Court will only reverse a trial court’s denial of JNOV if, after considering the evidence in the light most favorable to the nonmoving party, there is no credible evidence supporting the jury’s verdict,” we found that “[s]ince our case-law specifically provides that the question of product misuse is a jury question, the *461 trial court committed no error in upholding the jury’s decision.” Id. at 1202-03.
¶ 75. Here the jury considered the following testimony of Holmes, who was at the time being cross examined by MSA’s defense counsel:
Q: Now, when you were working at T.P. Groome’s, you would — said there were times when you were wearing the respirator you were wearing that the filter would get clogged; is that right?
A: Yeah.
Q: And when it would get clogged, you would take it off and brush it off and stick the filter back in sometimes, right?
A: Yeah.
Q: Sometimes, maybe every couple days or so, your supervisor would give you another filter, right?
A: No.
Q: He never?
A: No.
Q: So the entire time you worked at T.P. Groome’s, you only used one filter?
A: That’s all.
Q: Okay. Well, do you recall telling me in your deposition that you got new filters?
A: Huh?
Q: Do you recall telling me in the deposition that you got new filters?
A: Did I ask them for some?
Q: Yeah. That sometimes they would give you—
A: Asking wasn’t going to help none. Yeah, I would ask him for some. He would cuss you out.
Q: And he would never give you a filter.
A: No. -He would cuss you out.
Q: And even though you would ask for a filter, he wouldn’t give you one.
A: No.
(Emphasis added.) Holmes’s testimony on cross examination regarding whether or not T.P. Groome had provided him filters was all but clear. But it can be inferred, based on the deposition testimony mentioned in the jury’s presence, and considering the evidence in the light most favorable to Holmes, as we are required to do in the context of reviewing a trial court’s denial of a motion for JNOV, that at some other point in the case (i.e., Holmes’s deposition), Holmes had testified that replacement filters had, in fact, been provided by his employer.
¶ 76. Not only was Holmes’s trial testimony tenuous, expert testimony adduced at trial substantially contradicted that the respirator’s original filter could have lasted from 1958 through 1964. Holmes’s expert, the industrial hygenist, Dr. Vernon Rose, testified on cross examination by counsel for MSA the following:
Q: And [Holmes] testified that he newer once — he said he worked there from '58 to '64, and never once got a new filter. Did you hear him say that?
A: I heard him say that. That’s all I can say. I heard him say that. I find it very difficult to believe; but, nevertheless, that’s what he said.
Dr. Rose continued that he would be critical of Holmes’s employer for failure to replace the filter, but that he “would be amazed that such a filter could last more than a week or so at best” and that no filter on the market could have lasted through the time period to which Holmes had testified. Moreover, MSA’s own expert on respirators and respiratory protection, Dr. James Johnson, testified that Holmes’s testimony that the filters in his Dustfoe 66 respirator had not been changed during his employment at T.P. *462 Groome “is just not — probably not even possible, without some really extenuating circumstances” and that the “useful life of the filter is days to weeks.”
¶ 77. The majority today finds unrefut-ed and unequivocally accurate Holmes’s testimony that the filter in his Dustfoe 66 respirator never was changed by him or T.P. Groome, noting the precedent that “[w]hen the testimony of a witness is not contradicted, either by direct evidence or by circumstances, it must be taken as true.” Maj. Op. ¶ 56 (quoting Hearin-Miller Transporters, Inc. v. Currie, 248 So.2d 451, 454 (Miss.1971)). But this is not a case like Currie, in which this Court reversed and rendered the jury’s award of $100,000 to the plaintiff. Currie, 248 So.2d at 454. At issue in that case was whether the defendant’s truck had negligently crossed the center line prior to the wreck, upon which the plaintiff had based a negligence claim. Id. The only eyewitness testimony adduced at trial was from the defendant’s driver, who testified that his tractor-trailer had remained in the proper lane “until after the impact when he lost control of his unit.” Id. at 453. “Reluctant as we are to disturb the verdict of the jury,” we held that the uncontradicted testimony required the reversal of the judgment for the plaintiff. Id. at 454 (quoting Tombigbee Electric Power Ass’n v. Gandy, 216 Miss. 444, 62 So.2d 567, 571 (1953)).
¶ 78. Additionally, Holmes adduced expert testimony from Darrell Bevis, qualified and accepted as an expert in industrial hygiene and respiratory protection in design and warnings. Bevis, who had served at Los Alamos National Laboratory as its manager of respiratory protection, testified that he had worked in the field of respiratory protection for fifty-two years. Bevis testified that the Dustfoe 66 respirator was, in fact “definitely” defective, identifying five specific problems with its design. First, the face piece assembly was defective because the pliable rubber face seal tended to lose its shape and allow for leakage; further, the aluminum body would cause cuts and tears in the rubber part when removed, causing leakage. The second problem with the Dustfoe 66 respirator, according to Bevis, was that its exhalation valve, the “outlet for the air from the respirator” was faulty. Third, Bevis testified, as did the other experts, that the filters for the Dustfoe 66 respirator would fail in high humidity. Fourth, a face seal check, the mechanism by which a user of the Dustfoe 66 respirator could ensure that the respirator had been properly sealed, was impossible. Fifth, according to Bevis, the strap suspension tended to “cradle” and prevented situating the mask properly on the face. Thus, even assuming that Holmes and/or his employer misused the Dustfoe 66 respirator, expert testimony regarding other design defects supported the jury’s imposition of liability.
¶ 79. In the present case, various expert witnesses, including one representing Holmes and the other representing MSA, testified that Holmes’s claim that he used only one filter in his respirator throughout his entire employment with T.P. Groome was a virtual impossibility. Therefore, it cannot be said that Holmes’s testimony was uncontradicted or unrefuted. The jury was presented with this conflicting evidence and resolved it by returning a verdict in favor of Holmes. We cannot say that, having considered “the evidence in the light most favorable to the nonmoving party, there is no credible evidence supporting the jury’s verdict.” Newman, 656 So.2d at 1202 (emphasis added). I would hold that the trial' court committed no error in denying MSA’s motion for JNOV.
CHANDLER AND KING, JJ., JOIN THIS OPINION.

. Holmes 'testified unequivocally that he can neither read nor write.